IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RAUL BOTELLO, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:21-cv-04650 |
| v. | ) | |
| | ) | Magistrate Judge Jeannice W. Appenteng |
| SERGEANT LILL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is a motion for summary judgement filed by defendants Sergeant Lill and the City of Aurora under Federal Rule of Civil Procedure 56. Dkt. 72. For the following reasons, the motion is granted.

## Background

The following facts are taken from the parties' Local Rule 56.1 submissions,[1] the materials cited therein, and other aspects of the record in this case. All facts are genuinely undisputed unless otherwise noted.

In the early hours of September 2, 2019, a City of Aurora ("the City") police officer Sergeant Lill was on patrol when he encountered a bicyclist that was riding at night without lights. Dkt. 79 ¶ 11. Sergeant Lill temporarily stopped the bicyclist to inform him that he needed to display lights on his bike. *Id.* ¶ 12. He did not issue

---

[1] *See* Defendants' Local Rule 56.1 Statement of Material Facts, Dkt. 73; Plaintiff's Response to Defendants' Local Rule 56.1 Statement of Material Facts, Dkt. 79; Plaintiff's Local Rule 56.1(b)(3) Statement of Additional Material Facts, Dkt. 80; Defendants' Response to Plaintiff's Statement of Additional Facts, Dkt. 83.

a citation to the bicyclist, and the bicyclist continued, with Sergeant Lill returning to his patrol. *Id.*

Meanwhile, an individual named Rodrigo Lara-Bueno was driving a vehicle containing plaintiff Raul Botello in the backseat, with an individual named Jerry Burton in the front passenger seat. *See id.* ¶¶ 3, 7, 9. Within moments of Sergeant Lill ending his stop with the bicyclist, and out of view of Sergeant Lill, Lara-Bueno almost hit the bicyclist. *Id.* ¶ 8; *see also* Dkt. 73, Ex. B at 36, 86. Burton and Lara-Bueno began arguing about Lara-Bueno's driving. Dkt. 79 ¶ 9. Lara-Bueno then pulled the car over and began fist-fighting with Burton inside the car. *Id.*

The bicyclist then yelled to Sergeant Lill, stating a car almost hit him. Dkt. 79 ¶¶ 13, 14. The bicyclist provided Sergeant Lill with a description of the vehicle and the direction the car was traveling. *Id.* Sergeant Lill drove in that direction and came upon a vehicle matching the description. *Id.* ¶ 15. As Sergeant Lill approached the vehicle, he observed an individual, later identified as Botello, exit the backseat of the vehicle and move around the back of the vehicle, to the front passenger window. *Id.* ¶¶ 9, 10; *see also* Dkt. 73, Ex. B, 73:9-74:4; Ex. E, 6:25–6:38.[2] Sergeant Lill then observed Botello make a quick movement with his hands, grasping something from his waistband, and then moving his hands towards the interior of

---

[2] Dkt. 73, Exhibit E refers to Sergeant Lill's dash camera video. Although neither party mentions it in their statement of facts, the Court finds that it is apparent from Exhibit E that Sergeant Lill's police vehicle is equipped with a dash-mounted camera.

2

the vehicle. Dkt. 79 ¶ 17.³ Sergeant Lill then observed Botello turn to walk away from the vehicle. *Id.* At the same time, Sergeant Lill believed he heard Botello say, "It's the cops." *Id.*⁴ Sergeant Lill's dash camera video does not contain audio at this point as Sergeant Lill had not yet activated the microphone. Dkt. 73, Ex. E. Sergeant Lill then ordered everyone to exit the car and to place their hands on the vehicle. Dkt. 79 ¶ 19.

When another officer arrived, the officers handcuffed Botello, Lara-Bueno, and Burton. *Id.* ¶ 21. Sergeant Lill searched the vehicle and found an uncased and loaded pistol in the backseat. *Id.*; Dkt. 73, Ex. G at 28–30, 32, 33. After the other officer read Botello his *Miranda* rights, Sergeant Lill questioned Botello about the pistol. Dkt. 73, Ex. E at 18:48–21:30, 29:00–32:30. Sergeant Lill learned through dispatch that Botello did not possess a valid Firearm Owners Identification Card ("FOID"). Dkt. 73, Ex. B at 87.

Sergeant Lill then arrested Botello and took him into custody for aggravated unlawful use of a weapon because Sergeant Lill saw Botello make quick arm movements from his waist area towards the interior of the vehicle, discovered an

---

³ Plaintiff argues that neither the dash camera video nor plaintiff's testimony demonstrate that he made a quick movement. However, as the Court explains below, this fact is not genuinely in dispute.

⁴ Although Botello disputes that he said, "It's the cops," Dkt. 79 ¶ 17, he offers no evidence in support. The Court does not find this fact genuinely disputed on Botello's say-so alone. *See Li v. Fresenius Kabi USA, LLC*, 100 F.4th 988, 995 (7th Cir. 2024) (finding plaintiff "presented no admissible evidence to raise a genuine dispute of material fact" as to defendant's assertions and that "a response to a Rule 56.1 statement is not, on its own, admissible evidence"). In fact, there is evidence that supports Sergeant Lill's belief. Dkt. 73, Ex. C at 5 (during Burton's deposition, he testified that Botello said, "the cops are here . . . stop, stop, the cops.").

3

uncased, loaded pistol in the backseat where Botello previously sat, and learned Botello did not have a valid FOID card. Dkt. 79 ¶ 23; Dkt. 73, Ex. B at 87. Ultimately, the State's Attorney's Office indicted Botello with aggravated unlawful use of a weapon. Dkt. 79 ¶¶ 22, 23, 26. The state eventually dismissed Botello's case when it discovered Lara-Bueno, not Botello, possessed the pistol. *Id.* ¶ 33. Botello then brought the instant action. The parties consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636(c), Dkt. 12, and this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

## Legal Standard

Motions for summary judgment are granted when the evidence shows "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A court must view the facts in the light most favorable to the non-movant. *See Kailin v. Village of Gurnee*, 77 F.4th 476, 478 (7th Cir. 2023). "A genuine issue of material fact exists when, based on the evidence, a jury could find for the non-moving party." *Ellison v. United States Postal Serv.*, 84 F.4th 750, 755 (7th Cir. 2023). A fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, summary judgment is appropriate only if those disputed facts do not affect the outcome. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Disputed facts irrelevant to the legal question will not be considered. *Anderson*, 477 U.S. at 248.

Ordinarily, "[w]here the material facts specifically averred by one party contradict the facts averred by a party moving for summary judgment, the motion must be denied." *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003). Video evidence in the hands of the nonmoving party may defeat a motion for summary judgment when the video "blatantly contradicts" the moving party's story. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *see also Kailin*, 77 F.4th at 481 (explaining that video evidence "can eviscerate a factual dispute only when the video is so definitive that there could be no reasonable disagreement about what the video depicts"); *Grant v. Hartman*, 924 F.3d 445, 450 (7th Cir. 2019) (refusing to find there was no material dispute of fact where the video did not provide irrefutable evidence of the movant's version of the facts). A court does not have to accept one party's story of events if the "videotape tells quite a different story." *Scott*, 550 U.S. at 378–79 (holding that a video showed there were no *genuine* issues of material fact, even though the parties characterized the facts differently). However, "the party invoking *Scott* must show that the other party's version of the facts [is] so '*blatantly contradicted*' and '*utterly discredited* by the record' such that '*no reasonable jury*' could believe it." *Franklin v. Blackman*, No. 13-cv-470, 2014 WL 6685950, at *6 (N.D. Ill. Nov. 25, 2014) (quoting *Scott*, 550 U.S. at 380) (emphasis in original). In other words, "if the recording renders a party's story merely unlikely yet does not necessarily contradict it, the default rule kicks in" and the court must accept that party's version for summary judgment purposes. *Brooks v. Miller*, 78 F.4th 1267, 1278 (11th Cir. 2023).

5

**Discussion**

Botello brings Counts I (unlawful arrest and detainment) and II (malicious prosecution) against Sergeant Lill,[5] alleging his Fourth Amendment rights were infringed in violation of 42 U.S.C. § 1983. Botello further brings Counts III (malicious prosecution) and IV (indemnity) under Illinois law against the City for Sergeant Lill's alleged misconduct. Defendants move for summary judgment in their favor, arguing the facts demonstrate that Sergeant Lill had probable cause to arrest Botello and therefore qualified immunity shields Sergeant Lill from liability. Further, the City argues Sergeant Lill's lack of liability precludes the City's liability. For the reasons set forth below, the Court finds that Sergeant Lill had arguable probable cause to arrest Botello and is thus entitled to qualified immunity. Accordingly, the Court grants defendants' motion for summary judgment on all counts.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). In the context of false arrest and malicious prosecution claims, the existence of arguable probable cause entitles law enforcement officers to qualified immunity, shielding the officers from liability. *See*

---

[5] Botello also sued another City officer, Officer Trujillo. However, in his response to defendants' motion for summary judgment, Botello moved to dismiss Officer Trujillo. Dkt. 78 at 1. The Court grants this motion and dismisses Officer Trujillo with prejudice.

6

*Cibulka v. City of Madison*, 992 F.3d 633, 638 (7th Cir. 2021) (officers entitled to qualified immunity on false arrest claim where arguable probable cause existed); *Penn v. Chi. State Univ.*, 162 F. Supp. 2d 968, 977 (N.D. Ill. 2001) (officers entitled to qualified immunity on malicious prosecution claim where arguable probable cause existed).

Probable cause exists "if the totality of the facts and circumstances known to the [officer] at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime" as defined by state law. *Abbott v. Sangamon Cnty.*, 705 F.3d 706, 715 (7th Cir. 2013) (citations omitted). Whether probable cause exists is examined from an objective point of view, looking to what the officer knew at the time of the arrest. *See Johnson v. Myers*, 53 F.4th 1063, 1068 (7th Cir. 2022) (citing *Abbott*, 705 F.3d at 714; *Harney v. City of Chicago*, 702 F.3d 916, 922 (7th Cir. 2012)).

*Arguable* probable cause, however, exists when "a reasonable officer, in light of the information available to the officers at the time of plaintiff's arrest, could have believed that there was probable cause to arrest." *Kies v. City of Aurora*, 156 F. Supp. 2d 970, 982 (N.D. Ill. 2001) (quoting *Juriss v. McGowan,* 957 F.2d 345, 351 (7th Cir. 1992)). Arguable probable cause entitles an officer to qualified immunity even if a court later finds that an officer mistakenly believed that probable cause existed. *See Gutierrez v. Kermon*, 722 F.3d 1003, 1008 (7th Cir. 2013). "An officer's actions will be cloaked with qualified immunity even if the arrestee is later found

7

innocent." *Kies*, 156 F. Supp. 2d at 982 (quoting *Jenkins v. Keating,* 147 F.3d 577, 585 (7th Cir.1998)).

Under Illinois law, a person commits the offense of aggravated unlawful use of a weapon when, among other ways, he knowingly "[c]arries . . . in any vehicle . . . any pistol . . . and . . . the pistol . . . was uncased, loaded, and immediately accessible at the time of the offense and the person possessing the pistol . . . has not been issued a currently valid license under the Firearm Concealed Carry Act[.]" 720 ILCS 5/24-1.6(a)(3)(A-5). Further, the Firearm Concealed Carry Act requires an individual to have a currently valid FOID card. 430 ILCS 66/25(2).

The primary question is whether Sergeant Lill had at least arguable probable cause to arrest Botello for aggravated unlawful use of a weapon. Botello contends there are material facts in dispute concerning whether probable cause existed at the time of the arrest. Botello invokes *Scott v. Harris*, 550 U.S. 372 (2007), arguing the Court should ignore Sergeant Lill's depiction of the facts because it is contradicted by the dash camera video. In *Scott*, the United States Supreme Court held that a court, in determining whether there is a genuine dispute of material fact for summary judgment purposes, may ignore testimonial evidence only when it is "blatantly contradicted" and "utterly discredited" by video evidence such that "no reasonable jury" could believe the testimonial evidence. 550 U.S. at 380. As the Seventh Circuit has explained, "*Scott* does not treat video footage as a distinct type of evidence that is not subject to the normal summary judgment strictures. It holds only that a factual account should not be credited when the record contains evidence

8

that is flatly contradictory to that account." *Hurt v. Wise*, 880 F.3d 831, 840 (7th Cir. 2018); *see also Ferguson v. McDonough*, 13 F.4th 574, 581 (7th Cir. 2021) (declining to apply the *Scott* exception where the video did not utterly discredit the opposing party's version of the facts).

The facts material to Sergeant Lill's belief that probable cause existed to arrest Botello are as follows: Botello occupied the backseat of the vehicle; when Sergeant Lill arrived, Botello said, "It's the cops," and made certain furtive movements with his arms from his waist area towards the interior of the vehicle; an uncased and loaded pistol was found in the backseat; and Botello did not have a FOID card. The facts that Botello disputes are that he (Botello) stated, "It's the cops," and that he made furtive movements with his arms towards the vehicle.

The Court finds that the video does not "blatantly contradict" or "utterly discredit" these two facts, and therefore the Court declines Botello's invitation to ignore Sergeant Lill's version of the facts. At the point when Sergeant Lill claims to have heard Botello say "It's the cops," the dash camera audio was not yet activated. Therefore, the dash camera video is literally silent as to whether Botello made this statement. Botello also cites to his testimony in disputing this fact; however, Botello's testimony neither confirms nor denies he made the statement. Dkt. 73, Ex. A at 27:2–28:1. Further, the dash camera video shows Botello making movements with his hands before throwing them in the air and walking away from the vehicle.[6]

---

[6] Botello argues that Sergeant Lill "falsely claimed to have observed Plaintiff throwing an item into the rear seat of the vehicle." Dkt. 81 at 7. Botello asserts that because probable cause was based on false information, his Fourth Amendment rights were violated. However, there is no evidence that Sergeant Lill knowingly fabricated evidence or made

9

Dkt. 73, Ex. E. at 6m 48s – 6m 54s. Botello again cites to his testimony in arguing that this fact is disputed. Again, Botello's testimony neither confirms nor denies he made furtive movements. Dkt. 73, Ex. A at 27:2–28:1.

Accordingly, the Court finds that the undisputed facts, even taken in the light most favorable to Botello, are that Sergeant Lill observed Botello exit the backseat of the car and move to the passenger side, he heard Botello say, "It's the cops," and then saw Botello make movements with his hands from his waist area towards the interior of the car where Sergeant Lill later found an uncased, loaded pistol; and, before his arrest, Sergeant Lill learned Botello did not have a FOID card. On these facts, the Court finds that given the information available to Sergeant Lill at the time of plaintiff's arrest, he reasonably could have believed that there was probable cause to arrest Botello for aggravated unlawful use of a weapon. *Juriss,* 957 F.2d at 351. Accordingly, Sergeant Lill is entitled to qualified immunity and precluded from liability. Therefore, the Court grants summary judgment on Counts I and II.

The Court further grants summary judgment on Counts III and IV, which allege state-law malicious prosecution and indemnification claims against the City. Under Illinois law, a municipality "is not liable for any injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2-109;

---

any knowingly false statements. At most, Sergeant Lill was mistaken in his beliefs, which, nonetheless, affords him qualified immunity. *Fleming v. Livingston County*, 674 F.3d 874, 880 (7th Cir. 2012) ("[A] defendant is entitled to qualified immunity . . . when, if there is no probable cause, a reasonable officer could have mistakenly believed that probable cause existed.") (internal marks removed).

10

*see also Lee v. Harris*, No. 3:21-cv-50199, 2023 WL 8701081 (N.D. Ill. Dec. 15, 2023). Therefore, because the Court finds Sergeant Lill cannot be held liable due to his qualified immunity, summary judgment is granted on Counts III and IV.

## CONCLUSION

For the reasons stated above, defendants' motion for summary judgment, Dkt. 72, is granted. Enter judgment. Civil case terminated.

**So Ordered.**

*[signature]*

**Jeannice W. Appenteng**
**United States Magistrate Judge**